Harry W. Davis, J.
The defendants here were indicted on *24 June 22, 1977 for the crimes of attempted murder in the second degree, two counts of assault in the first degree, burglary in the second degree, criminal possession of a weapon in the second degree, and attempted kidnapping in the first degree, as the result of an incident which occurred on June 14, 1977 at approximately 2:20 p.m when the defendants allegedly entered the premises of the Yugoslav Permanent Mission to the United Nations at 854 Fifth Avenue, New York City, apparently for the purpose of dramatizing the cause of Croatian independence. During that invasion, which lasted some two hours, a Yugoslav chauffeur was wounded by a bullet fired from a weapon alleged to have been in the possession of one of the defendants.
Although the defendants were initially held without bail at arraignment in the Criminal Court on June 15, the bail was set following their indictment by the Grand Jury, in the amount of $75,000 bond or cash for Dizdar and Brekalo and $40,000 bond or cash for Buconjic. Counsel for defendant Buconjic has now offered to procure an insurance company bond in satisfaction of the bail conditions for the release of this defendant from the custody of the New York City Department of Corrections. The District Attorney, however, vigorously opposes acceptance of the bond, citing CPL 520.30 and CPL 500.10. In his rather novel argument, the Assistant District Attorney contends that since CPL 520.30 authorizes the court to conduct an inquiry into the reliability of any security submitted, the court should, in the present case, reject defendant Buconjic’s undertaking as insufficient. It is the District Attorney’s position that the defendant’s security is valueless. He cites CPL 500.10 (subd 3) which provides as follows: "A court fixes bail when, having acquired control over the person of a principal, it designates a sum of money and stipulates that, if bail in such amount is posted on behalf of the principal and approved, it will permit him to be at liberty during the pendency of the criminal action or proceeding involved.”
The District Attorney places emphasis on the meaning of the words "at liberty.” He advises that there is pending in the United States District Court, another criminal action against these defendants based upon the same incident and that bail is fixed there in the amount of $100,000 for Buconjic. He urges that since there is a detainer on file for this defendant, his release from detention here, would merely require his delivery *25 to the Federal authorities and that this could scarcely be termed "at liberty.” Rather this defendant would simply be exchanging one accommodation and jailor for another.
The District Attorney urges yet another reason for denial of approval of the bond. He argues that the bond offered would not insure Buconjic’s appearance in this court since the defendant would be under the control of the Federal authorities. Generally, when an individual is out on bail, it is the duty of the obligor to provide for his presence at trial as well as at all other intermediate proceedings and if he fails in that responsibility, then bail may be forfeited. Here the bondsman would not only be unable to assure the defendant’s appearance since he would be under Federal supervision, but the guarantor would not even be liable for forfeiture due to his lack of control over the defendant’s person. Consequently, the District Attorney argues, the security furnished by Buconjic is entirely worthless.
What clearly appears here is a conflict between two governmental entities; one seeking to obtain custody of these three defendants, the other to retain the custody. Both the District Attorney of New York County and the United States Attorney for the Southern District wish to try them and each seems to be engaged in a race to be the first to do so. Therefore, the District Attorney is apparently intent on retaining State custody over the defendants while defense counsel, confronted with the unhappy prospect of two separate jurisdictions endeavoring to prosecute his clients for the several offenses arising out of the same set of incidents would probably not be displeased to see this one defendant in different hands, thereby complicating the situation for both the Federal and State courts in securing the presence of all three of them for trial.
It is undisputed that the purpose of requiring a defendant to give bail after arrest is to insure his appearance in court. (People ex rel. Shapiro v Keeper of City Prison, 290 NY 393; Bellamy v Judges & Justices, 41 AD2d 196, affd 32 NY2d 886.) In the present circumstances, therefore, the bond submitted by the defendant cannot guarantee his presence in this court; only the Federal authorities would be able to do that, and if Buconjic failed to appear by reason thereof, there could be no forfeiture. While this bifurcation of custody may suit the aims of counsel, I do not view it as an expeditious administration of *26 justice, particularly since this matter has already been set down for trial on September 6, 1977.
I find, accordingly, that pursuant to CPL 520.30, the defendant’s bond is insufficient. Bail is hereby revoked, and the defendant Buconjic is remanded to the custody of the New York City Department of Corrections. The court will, of course, review its order upon application at the proper time.